# SUPERIOR COURT

State
vs.    } Ind. No. 430
Raoul H. Roy

RESCRIPT

May 20, 1925

Capotosto, J. The defendant was found guilty of manslaughter in causing the death of one Carl Smith through the reckless operation of an automobile which the defendant was driving on the Apponaug Road in the vicinity of Norwood, in the town of Warwick, on December 13, 1924.

About 7:30 on the evening of that day the defendant, in company with Fred J. San Souci, Mrs. San Souci, Carl Smith and Alice Brown, went for a ride in a Hudson Speedster belonging to San Souci. On the way out San Souci drove the car. On the way home from Arctic, where the party had stopped at a restaurant for refreshments, the defendant did the driving with Alice Brown sitting at his right. The rear seat was occued by San Souci on the left, Mrs. San Souci in the centre and Carl Smith on the right.

From Arctic to Dead Man's Curve, so-called, the defendant drove the car at between twenty-five and thirty miles an hour. After passing this point, let the surviving occupants of the car unfold the story.

San Souci testified that the road was wet; that shortly after making the curve at Greenwood the defendant began to "step on it;" that he passed two other cars going in the same direction in the vicinity of Hillsgrove, and at his request to "take it easy," the defendant reduced his speed to some extent; that after a few seconds he speeded up again to such a rate that San Souci became frightened; that he leaned forward and noticed with the aid of the dash light that the speedometer registered a

rate of fifty-five miles an hour, and that he thereupon shouted to the defendant to stop; that the defendant, without checking his speed, leaned towards the witness and asked him if he was afraid; that they seemed to be "riding on air, floating;" that the car, which was swerving to one and the other side, suddenly swung to its right and crashed into a telegraph pole along the side of the road.

Alice Brown's testimony was to the effect that after leaving the curve at Greenwood they had passed the same machine twice at a rate of some forty-five miles an hour; that it was a very dark night; that just before the accident San Souci told the defendant to slow down; that the defendant in turn asked San Souci if he was getting "cold feet;" that she did not notice the speedometer immediately before the crash but that the car was not going very much slower than forty-five miles an hour.

Mrs. San Souci did not testify on account of illness unconnected with the accident at the time of trial.

The defendant in his own behalf said that he was thoroughly familiar with the car and with that particular portion of the road, having driven over it many times by day and night when he was working as a jitney driver; that the car which he was driving had only the right headlight, and that this one headlight and the two dash lights were on; that the road was wet and that it was actually raining, although not hard, when he was approaching the scene of the accident; that the windshield was obscured a little by the rain but that he could see "fairly well." The defendant further testified that before the accident another machine had twice passed him and that he in turn had passed the other car twice at 35 miles an hour or better; that San Souci did tell him to slow down and that he did lower his speed to twenty-

six to twenty-eight miles an hour; that when he was within a short distance from the telegraph pole in question a dog suddenly darted out into the road; that he swung around to his right to go behind the dog, and that then the rear end of his car struck the pole.

After striking the pole what remained together of the automobile which the defendant was driving went a considerable distance, variously estimated at between fifty to one hundred and twenty-five feet. The different parts of the automobile which were strewn on the road were later gathered by Edwin C. Golden, a garage man, who towed the wreck to his place of business and left what remained of the former Hudson Speedster in an open area adjoining his repair shop from the time of the accident to the date of the trial on February 9, 1925.

According to Golden, the pole which was struck by the automobile was gouged and splintered at about the height that the hub cap of the car would be above the ground. He further stated that the pole was twisted around approximately one-quarter of a turn, that it was thrown some thirteen or fourteen inches out of perpendicular, and that he found pieces of the running-board and some curtain snaps from the automobile imbedded in it.

Of those who were riding in the automobile, Carl Smith unfortunately lost his life through a fracture of the skull; Miss Brown suffered a broken arm and broken teeth; the others escaped with minor injuries and a severe shaking up.

The defendant claims, among other things, that he did not receive a fair trial because the jury in fact must necessarily have been prejudiced by a view which was had of the wrecked automobile. The motion of the State for a view of the car was granted against the defendant's objection, and his exception was duly noted. While the defendant admits that it is not the province of this Court to review its own rulings, yet he maintains that a view by the jury of the wreckage which has been exposed to the elements for nearly three months in an open lot influenced them unfairly in their determination of the evidence. The condition of the automobile, directly resulting from the defendant's conduct, being such that it was impossible to bring the fragments to court, it seems but fair to all parties concerned that the jury should have seen the indescribable mass which was once a Hudson Speedster. The testimony of Mr. Golden to the effect that the remnants of the car viewed by the jury were what he towed to his open lot immediately after the accident, and that the wreckage was substantially in the same condition when the jury saw it as when he first brought it to his place of business, ordinary wear and tear by the elements excepted, sufficiently protected the defendant's rights against any such influence. I do not conceive that the defendant would have urged this ground for a new trial if it had been possible to bring the damaged car to East Greenwich for an inspection by the jury.

In support of his claim of newly discovered evidence, the defendant filed an affidavit signed by Joseph Ricketts, a sergeant of police of the Town of Warwick, to the effect that on the morning of December 14, 1924, San Souci stated "that the man operating the car was Carl Smith, the man who was killed." In a counter affidavit filed by the state and signed by Chief Ellis A. Cranston, it is stated that this particular statement of San Souci was brought to the defendant's attention by the Chief and that the defendant, in answer to a question as to whether there was any question

that he, the defendant, was driving the car, answered "absolutely none." The defendant at the trial and at the hearing on his motion for a new trial admitted that he was the driver at the time of the accident, but claims that he should be granted a new trial so as to be given an opportunity to impeach San Souci's testimony by showing contradictory statements made shortly after the occurrence. I believe that this claim is unsound. If we take Chief Cranston's affidavit as true, the defendant knew this fact at the time of trial; it was then his duty to impart all the information in his possession to his counsel for such use as might be expedient or necessary. Mere neglect or omission to fully protect one's interest can not give rise to the right to a new trial on the ground of newly discovered evidence. If we put aside the affidavit of Chief Cranston and give the defendant the benefit of every conceivable doubt by disregarding the testimony of San Souci in its entirety, we still have plenty of evidence, through testimony and physical facts, which leads to the conclusion that the jury reached a just verdict.

The defendant's main contention to the effect that the verdict is against the evidence is unsound. The facts and circumstances of this case clearly establish a course of action on the part of the defendant immediately before the accident which is not only wanton and reckless, but which almost borders upon an intentional disregard of human life. I place no credence on the untimely and unexpected appearance of a dog on the highway as related by the defendant. From all the evidence presented, I am inclined to believe that the dog story is what the defendant on sober thought would have preferred to have had as the real cause of the accident. The defendant's unjustifiable conduct, proven by ample and convincing evidence, which culminated directly in the death of Carl Smith, is deserving of unqualified disapproval.

Motion for new trial denied.

For the State: Dist. Atty. Gen. Jackvony.

For the Defendant: Everett D. Higgins, H. D. C. Dubois.